Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CRAIG WOERNER,<br><br>Plaintiff,<br><br>v.<br><br>HUTTIG BUILDING PRODUCTS, INC., DONALD GLASS, JAMES HIBBERD, PATRICK LARMON, J. KEITH MATHENEY, DELBERT TANNER, JON VRABELY, and GINA HOAGLAND,<br><br>Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Craig Woerner ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Huttig Building Products, Inc. ("Huttig" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the

1

"Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Huttig by Woodgrain Inc. ("Woodgrain").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Huttig common stock.

7. Defendant Huttig, together with its subsidiaries, distributes millwork, building materials, and wood products for new residential construction, in-home improvement,

2

remodeling, and repair works in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "HBP."

8. Defendant Donald Glass ("Glass") is a director of the Company.

9. Defendant James Hibberd ("Hibberd") is a director of the Company.

10. Defendant Patrick Larmon ("Larmon") is a director of the Company.

11. Defendant J. Keith Matheney ("Matheney") is a director of the Company.

12. Defendant Delbert Tanner ("Tanner") is Chairman of the Board of the Company.

13. Defendant Jon Vrabely ("Vrabely") is President, Chief Executive Officer, and a director of the Company.

14. Defendant Gina Hoagland ("Hoagland") is a director of the Company.

15. Defendants Glass, Hibberd, Larmon, Matheney, Tanner, Vrabely, and Hoagland are collectively referred to herein as the "Individual Defendants."

16. Defendants Huttig and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On March 21, 2022, Huttig and Woodgrain announced a definitive agreement whereby Woodgrain would acquire Huttig for $10.70 per share. The press release announcing the Proposed Transaction states, in pertinent part:

> **Woodgrain to Acquire Huttig Building Products**
>
> March 21, 2022 18:53 ET | Source: Huttig Building Products, Inc.
>
> FRUITLAND, Idaho and ST. LOUIS, March 21, 2022 (GLOBE NEWSWIRE) -- Woodgrain Inc. ("Woodgrain") and Huttig Building Products, Inc. ("Huttig," or the "Company") (NASDAQ: HBP) are pleased to announce a definitive agreement has been reached whereby Woodgrain will purchase Huttig, a leading distributor of

3

millwork, building materials, and wood products. This acquisition will significantly increase Woodgrain's distribution network, its product offering, and its value-added services.

*   *   *

Woodgrain will acquire Huttig in an all-cash transaction valued at $10.70 per share, or approximately $350 million including the assumption of debt. The acquisition is subject to a minimum tender of a majority of the outstanding Huttig common shares and other customary closing conditions, and is expected to close in the second quarter of 2022 subject to regulatory approval. The Huttig Board of Directors has unanimously approved the acquisition and recommends that Huttig stockholders tender their shares in the transaction.

Wells Fargo is serving as exclusive financial adviser to Woodgrain and will also serve as sole underwriter for the transaction financing. Stoel Rives is serving as legal advisor to Woodgrain on the transaction.

Lincoln International is serving as financial advisor to Huttig. Baker McKenzie is serving as legal advisor to Huttig on the transaction.

**About Woodgrain**

Woodgrain is one of the leading millwork operations with locations throughout the United States and Chile. With 68 years of quality craftsmanship and service, Woodgrain is a leading producer of mouldings, doors, and windows. Woodgrain, Inc. is headquartered in Fruitland, Idaho with six divisions and over 30 manufacturing and warehouse facilities in the United States and South America. For the nearest distributor of Woodgrain products, visit www.woodgrain.com.

**About Huttig**

Huttig, currently in its 138th year of business, is one of the largest domestic distributors of millwork, building materials and wood products used principally in new residential construction and in-home improvement, remodeling and repair work. Huttig distributes its products through 25 distribution centers serving 41 states. Huttig's wholesale distribution centers sell principally to building materials dealers, national buying groups, home centers and industrial users, including makers of manufactured homes.

18.     On March 29, 2022, Defendants caused to be filed with the SEC a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") in connection with the Proposed Transaction.

### B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

19. The Solicitation Statement, which recommends that Huttig shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Huttig's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Lincoln International LLC ("Lincoln"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

20. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Huttig Board; (ii) Background and Reasons for the Huttig Board's Recommendation; (iii) Certain Unaudited Prospective Financial Information; and (iv) Opinion of Lincoln, Huttig's Financial Advisor.

21. The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., New York City time, on April 25, 2022 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Huttig's Financial Projections

22. The Solicitation Statement omits material information concerning Huttig's

financial projections.

23. With respect to the Company's financial projections, the Solicitation Statement fails to disclose: (1) all line items underlying the Company's financial projections; (2) the Company's net income projections; (3) the Company's unlevered free cash flow projections, including all underlying line items; and (4) a reconciliation of all non-GAAP to GAAP metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection Proposed Transaction.

25. When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Lincoln's Analyses

27. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Lincoln.

28. With respect to Lincoln's "*Selected Public Companies Analysis*" and "*Selected Transactions Analysis*," the Solicitation Statement fails to disclose the individual multiples and financial metrics of each company and transaction Lincoln observed in its analyses.

29. The Solicitation Statement fails to disclose the following concerning Lincoln's "*Illustrative Discounted Cash Flow Analysis*": (1) the unlevered free cash flow projections of Huttig, including all underlying line items, which were utilized by Lincoln in connection with its analysis; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 12.5% to 13.5%, and (ii) perpetuity growth rates ranging from 2.0% to 3.0%; (3) the terminal values for Huttig; and (4) the amount of Huttig's net debt and debt-like items as of February 28, 2022.

30. The valuation methods, underlying assumptions, and key inputs used by Lincoln in rendering its purported fairness opinion must be fairly disclosed to the Company's

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 4, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

7

shareholders. The description of Lincoln's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

31. Without the information described above, the Company's shareholders are unable to fully understand Lincoln's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

32. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

33. The Solicitation Statement provides that, during the sales process, Huttig entered into non-disclosure agreements with 31 potential buyers.

34. The Solicitation Statement, however, fails to disclose the terms of Huttig's non-disclosure agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

35. Without this information, the Company's shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Huttig shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

36. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

37. The Solicitation Statement omits material information concerning potential conflicts of interest involving Company insiders.

38. The Solicitation Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

39. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

41. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

43. During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

44. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

45. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

46. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

47. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

48. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder**
**Against All Defendants**

49. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. Defendants caused the Solicitation Statement to be issued with the intent to solicit

shareholder support for the Proposed Transaction.

51. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

52. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

53. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

54. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

55. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the

11

Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

56. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

57. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful

information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

62. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 4, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*